**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JOHNAY FLORENCE, et al.,**

**Plaintiffs,**

**v.**

**VINEBROOK HOMES TRUST, INC., et al.,**

**Defendants.**

**Case No. 2:24-cv-4079**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Vascura**

**OPINION AND ORDER**

Johnay Florence, Ursula Jones, and Summer Milligan, the named plaintiffs in this putative class action, bring suit against their former landlord and its related corporate entities.[1] (Second Am. Compl., Doc. 24, #636–43). Acting on behalf of themselves and similarly situated individuals, Plaintiffs challenge as unlawful three separate fee provisions in their residential leases. (*Id.* at #644–50). Citing pleading defects, Defendants[2] now move to dismiss all of Plaintiffs' claims against them. (Doc. 28). For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 28).

[1] There is one exception. Defendant Hunter Warfield, Inc. (HW), is not part of the VineBrook corporate family. HW is a licensed debt collector that the landlord used to collect a consumer debt allegedly owed by Plaintiff Summer Milligan. (Doc. 24, #643, 655–57). Alleging that HW's conduct violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692–1692p, Plaintiffs pursue a separate "Class and Individual" count against it. (*Id.* at #674–76).

[2] Hunter Warfield is not a party to the present motion.

## BACKGROUND[3]

The various Defendants that bring this motion—VineBrook Homes Trust, Inc. (VHTI); VineBrook Homes Operating Partnership, L.P. (VHOP); Vinebrook Homes, LLC (VHLLC); NREA VB V, LLC; VB Six, LLC; and VineBrook Homes Borrower 1, LLC (collectively VineBrook or VineBrook Defendants)—are a network of businesses that own, manage, and lease out approximately 21,104 single-family residences (SFRs) nationwide—including 7,327 residences located in the Columbus, Cincinnati, and Dayton markets. (Doc. 24, #638–43). The three named plaintiffs—Florence, Jones, and Milligan—are all former Ohio VineBrook tenants. (*Id.* at #635–38). Plaintiffs' core charge is that VineBrook included several unlawful terms in Plaintiffs' respective leases. Those leases, known as "VineBrook Home Lease Agreements" (VBHLAs), (*id.* at #636–37), were "pre-prepared, form boilerplate, lease agreements," signed by all tenants at VineBrook properties, (*id.* at #644). Hence, Plaintiffs bring this proposed class action. Complicating matters on that front, though, Defendants modified their standard lease in August 2024, with Florence and Jones signing an earlier version of the standard lease, and Milligan signing a later one. The Court follows the parties' lead and refers to the two versions as the Pre-August 2024 VBHLA and the Post-August 2024 VBHLA. (*Id.* at #644, 647).

[3] Because this matter is before the Court on Defendants' motion to dismiss, the Court must accept the well-pleaded allegations in the operative complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). So while the Court relies on that complaint's allegations to recount the case's background, it reminds the reader that they are just that—allegations.

Plaintiffs challenge two provisions in the Pre-August 2024 VBHLA: a Property Administration Fee (PAF) provision and an attorney's fees provision. While the Post-August 2024 VBHLA omits those two provisions, Plaintiffs challenge a new provision from that lease—a Utility and Additional Rent Addendum (UARA).

Start with the Property Administration Fee. Under that provision, residents must pay $10 each month to help cover the cost of repairs and maintenance on the property:

> PROPERTY ADMINISTRATION FEE: Resident(s) hereby agrees to pay a monthly Property Administration Fee of ten dollars ($10.00). Such fee must be paid in full by the first day of each month along with other monthly charges. This fee is nonrefundable and additional to the monthly rent charges. The Property Administration Fee is being assessed to help Lessor pay for the costs associated with maintenance, repairs, and damages to the property based by natural and unnatural events along with general use of the property. Failure to pay the Property Administration Fee as part of monthly charges can result in a late fee and constitutes a default under this Lease.

(*Id.* at #644). While the PAF provision represents that the fee will "help the Lessor pay for the costs associated with maintenance, repairs, and damages," Plaintiffs say that is not in fact the case. Rather, VineBrook uses the funds to purchase insurance policies covering their own "interests" in the SFRs. (*Id.* at #652). VineBrook receives "certain financial incentives" for purchasing those policies. (*Id.*). And VineBrook diverts some of the funds to "other financial benefits inuring only to [VineBrook]." (*Id.* at #654). Importantly, though, the complaint does not state exactly what those nebulous "interests," "financial incentives," or "financial benefits" might entail. In any event, Plaintiffs further allege that the Post-August 2024 VBHLAs "were purposely modified to remove the PAF provision," but that VHOP and VHLLC

nonetheless continued to collect the $10 monthly fees. (*Id.* at #662). Relying on those various "misrepresentations," Plaintiffs bring a fraud-based RICO claim. (*Id.* at #661–63). Finally, Plaintiffs also claim that, even apart from the misrepresentation aspect, Ohio law prevents landlords from imposing a Property Administration Fee because such a fee requires tenants to assume a liability that the law assigns to landlords. (*Id.* at #645 & n.2).

Next is the Pre-August 2024 VBHLAs' second allegedly problematic term: a provision that seems to allow VineBrook to recover attorney's fees incurred in connection with an eviction:

> In the event Lessee is in default, Lessor has the following recourse … [s]ubject to state law, Lessee will be liable for: … All costs associated with the eviction of Lessee, including any and all lease reinstatement fees or legal fees or attorney fees. Lessor will assess a minimum charge of three hundred, fifty dollars ($350.00).

(*Id.* at #646, 695). Plaintiffs characterize this as an "attorney fee recovery provision," and allege that it too violates Ohio law. (*Id.* at #647). That is because, according to Plaintiffs, any agreement by which a tenant agrees to pay a landlord's attorney's fees violates Ohio Revised Code § 5321.13(C). (*Id.* at #647).

VineBrook used this same Pre-August 2024 VBHLA form—including both the PAF provision and the attorney's fees provision—on a continuous basis for all SFRs it owned, managed, or leased from November 2018 through approximately August 6, 2024. (*Id.* at #647). Since 2018, thousands of tenants (including Florence and Jones) have signed those leases and paid the monthly PAF and faced potential exposure to the attorney's fees provision if evicted. (*Id.* at #651).

Turn now to the Post-August 2024 VBHLA. VineBrook started using it on August 6, 2024. (*Id.* at #647). As mentioned, it omits the two offending provisions from the previous version of the lease. (*Id.* at #647). But, according to Plaintiffs, despite removing the PAF provision, VineBrook "intentionally continued to charge and collect the PAFs from VineBrook Defendants' tenants," including Milligan. (*Id.* at #654).

Beyond that, the Post-August 2024 VBHLAs include the new offending UARA provision. (*Id.* at #649). Under the UARA, VineBrook engages Conservice as a third-party billing agent for utility services provided to tenants—including water, sewer, stormwater, trash, gas, and electricity. (*Id.*). Conservice charges tenants a $30.00 "Set Up Fee" and up to $9.99 per month as a "Monthly Service Fee." (*Id.*). While it is Conservice that charges and collects these fees, not VineBrook, Plaintiffs argue that Conservice does so as VineBrook's agent. (*Id.* at #649–50). Once again, Plaintiffs say that collecting such fees violates Ohio law.

The Court now turns to the individual Plaintiffs. Johnay Florence previously executed two sequential Pre-August 2024 VBHLAs with VB Six, LLC, for a single-family residence located in Columbus, Ohio. (*Id.* at #689–717 (attaching leases)). Those leases contained the offending PAF and attorney's fees provisions. (*Id.*). The first lease ran for a one-year term beginning on or around April 21, 2023, with a base monthly rent of $1,250.00, plus a $10.00 PAF, for a total monthly charge of $1,260.00. (*Id.* at #685, 689, 691). The second lease ran for a one-year term beginning on or around April 26, 2024, with a base monthly rent of $1,325.00, plus the same $10.00

PAF. (*Id.* at #685, 706). Florence paid her monthly rent and the PAF throughout both leases. (*Id.* at #637). During her tenancy, Florence contacted VineBrook to request various (unnamed) repairs and maintenance, but VineBrook failed to make those repairs. (*Id.* at #685). Based on that, she claims that Defendants failed to maintain her residence in the fit and habitable condition Ohio law requires. (*Id.* at #685).

Ursula Jones executed a Pre-August 2024 VBHLA with NREA VB V, LLC, for a single-family residence in Huber Heights, Ohio. (*Id.* at #637). That lease was for a one-year term beginning on or around February 27, 2024, imposing a base monthly rent of $1,050.00 plus the $10.00 PAF, which Jones paid. (*Id.* at #637, 718–29 (attaching lease)). That lease likewise contained PAF and attorney's fees provisions. (*Id.*). Like Florence, Jones contacted VineBrook to request repairs and maintenance during her tenancy, which VineBrook failed to make. (*Id.* at #686).

Summer Milligan executed a Post-August 2024 VBHLA with VineBrook Homes Borrower 1, LLC, for a single-family residence in Columbus, Ohio. (*Id.* at #637–38). That lease was for a one-year term beginning on November 21, 2024, with a base monthly rent of $1,125.00. (*Id.* at #730–59 (attaching lease)). Milligan paid VineBrook a security deposit of at least $1,125.00 and moved into the residence on December 7, 2024. (*Id.* at #655).

Like other Post-August 2024 VBHLAs, Milligan's lease did not contain the PAF or attorney's fees provisions. It did, however, contain the UARA. (*Id.* at #649, 750–53). And, as described above, under the UARA, Conservice administered and billed Milligan for certain utility services—specifically water, sewer, and trash—for which

VineBrook remained the customer of record. (*Id.* at #649). Conservice also charged Milligan a one-time $30.00 account set-up fee and a monthly $9.99 service fee. (*Id.* at #649–50).

However, Milligan's tenancy did not last the full year. "[I]mmediately upon moving in, and for the next two [] months, … Milligan was confronted with numerous problems including but not limited to: misrepresentations about appliances, and the provision of appliances, hazardous mold growth, and insect infestation." (*Id.* at #655). The landlord "either ignored or refused" Milligan's demands for remediation, so she was compelled to depart the premises on February 12, 2025, as the property was not reasonably habitable. (*Id.*).

On March 12, 2025, VineBrook sent Milligan a "Move Out Statement" showing several charges, including a $13.55 PAF (and recall that her lease did not include a PAF), set off against her security deposit, leaving Milligan owing an alleged balance of $867.29. (*Id.* at #656). By the end of the month, VineBrook had placed that debt with Defendant Hunter Warfield, Inc. (HW), a Maryland corporation registered in Ohio that holds itself out as a nationwide, fully compliant, licensed debt collector. (*Id.* at #643, 656).

On April 3, 2025, HW called Milligan and demanded payment of $939.99. (*Id.* at #656). During the call, Milligan disputed the debt and informed HW that she had obtained counsel, providing HW with her attorney's contact information. (*Id.*). The next day, and after Plaintiffs raised the PAF charge's inclusion with Defendants, Milligan received a "Revised Move-Out Statement" that zeroed out the PAF charge.

(*Id.* at #648, 656). Milligan contends she in fact owes VineBrook nothing and that VineBrook has wrongfully withheld her $1,125.00 security deposit. (*Id.* at #656).

In sum, Plaintiffs allege that thousands of Ohio tenants executing both Pre- and Post-August 2024 VBHLAs have paid VineBrook PAFs, Set Up Fees, and Monthly Service Fees all in violation of Ohio law. (*Id.* at #650–51). Plaintiffs also argue that two of the VineBrook Defendants, VHOP and VHLLC, fraudulently represented not only to those Ohio tenants, but also to thousands of tenants in other states, that the PAF would be assessed to help pay for maintenance, repairs, and damages to the rented property, when in fact, as described above, that was not so. (*Id.* at #661–63).

Based on all that, Plaintiffs bring this putative class action on behalf of themselves and eight proposed classes of similarly situated individuals. (*Id.* at #657–61). Plaintiffs organize the proposed classes by lease type (Pre-August 2024 and Post-August 2024), geography (nationwide and Ohio-only), and the specific fee at issue (PAF, attorney's fees, Conservice set-up fees, and Conservice monthly service fees); the complaint also proposes a separate class for individuals who received a debt-collection call from HW without a subsequent validation notice. (*Id.*).

In total, Plaintiffs bring seven "Class and Individual" counts covering those eight proposed classes, six of which are against the VineBrook Defendants and one of which is against HW. (*Id.* at #661–76). The six VineBrook claims are: (1) civil RICO under 18 U.S.C. § 1962(c), against VHOP and VHLLC; (2) breach of contract; (3) unjust enrichment; (4) disgorgement under Ohio's Landlord-Tenant Act, R.C.

§ 5321.14(A); (5) conversion; and (6) declaratory and injunctive relief. (*Id.* at #662–74). Against HW, who is not a party to this motion, Plaintiffs assert a claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (*Id.* at #674–75). Beyond the proposed class claims, each Plaintiff also asserts an individual breach of contract claim against the VineBrook Defendants based on VineBrook's alleged failure to maintain their residences, and Milligan separately asserts an individual claim for wrongful withholding of her security deposit under Ohio Revised Code § 5321.16. (*Id.* at #685–88.)

VineBrook moves to dismiss the Second Amended Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 28). VineBrook alternatively moves to dismiss Defendants VHTI and VHOP for lack of personal jurisdiction under Rule 12(b)(2). (Doc. 28). That motion is now fully briefed. (Docs. 34, 37). The Court addresses each argument in turn.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.*

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in their favor,

and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp. Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything a plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact, "formulaic recitations of the elements of a cause of action," and "mere conclusory statements." *Iqbal*, 556 U.S. at 678 (cleaned up). Additionally, the Court may grant a motion to dismiss "on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted).

As noted above, Defendants also move to dismiss certain claims for lack of jurisdiction under Rule 12(b)(1). When a defendant challenges the Court's jurisdiction under Rule 12(b)(1), "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) ("[T]he plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met.").

While the Court does not reach Defendants' personal jurisdiction arguments, it does reach standing arguments directed at two of the claims. "Standing arises from the Constitution's mandate that federal courts decide only 'Cases' or 'Controversies.'" *Oklahoma v. United States*, 62 F.4th 221, 233 (6th Cir. 2023) (quoting U.S. Const. art. III, § 2, cl. 1). Standing is therefore a matter of the court's subject matter jurisdiction. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir.

2007). To establish standing to sue, a plaintiff "must point to an injury that is traceable to the defendant's conduct and that a judicial decision can redress." *Oklahoma*, 62 F.4th at 233 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Any injury-in-fact a plaintiff alleges must constitute "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up).

## LAW AND ANALYSIS

The VineBrook Defendants move to dismiss all of Plaintiffs' claims against them. While Defendants mostly argue pleading defects under Rule 12(b)(6), they also argue under Rule 12(b)(1) that Plaintiffs lack standing as to some of the claims and separately that the Court lacks personal jurisdiction over at least some of the VineBrook Defendants. Typically, of course, the Court would start with jurisdiction, and particularly subject matter jurisdiction, as that goes to the Court's power to act. Here, though, VineBrook directs its jurisdictional arguments only at some of the claims and some of the defendants. In short, they do not dispute that the Court has the power to hear the case, but rather, only whether the Court has the power to hear *some* of the claims and authority over *some* of the parties. Accordingly, the Court will move through the claims seriatim, noting those as to which subject-matter jurisdiction concerns arise. And, separately, because the Court dismisses (for failure to state a claim) those claims that are directed (in part) against the defendants raising

personal jurisdiction arguments, the Court declines to reach those jurisdictional arguments.

### A. The Court Dismisses Plaintiffs' RICO Claims Because They Do Not Sufficiently Plead Predicate Acts.

Plaintiffs assert a RICO claim against two of the Defendants, VHOP and VHLLC, on behalf of each named Plaintiff and the potential class. (Doc. 24, #661). The two companies are related. VHOP is a Delaware limited partnership that "[c]onducts all the business of VHTI" (the parent organization) and "own[s] all the SFR properties" at issue in this case. (*Id.* at #639). VHLLC, on the other hand, is an Ohio LLC that VHOP owns. It acts as the "SFR property management arm of VHTI and VHOP." (*Id.* at #639–40). Plaintiffs allege that these two "separate legal entities" conducted the "VineBrook Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs," in violation of 18 U.S.C. § 1962(c). (*Id.* at #661).

To move past the pleading stage on such a claim, Plaintiffs must plausibly allege that VHOP and VHLLC (1) conducted, (2) an enterprise, (3) through a pattern of, (4) racketeering activity. *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013). And because Plaintiffs base their RICO claim on the predicate offenses of wire and mail fraud, Federal Rule of Civil Procedure 9(b) applies to prongs three and four. Accordingly, they must "state with particularity the circumstances constituting fraud." *Wall v. Michigan Rental*, 852 F.3d 492, 495 (6th Cir. 2017) (applying Rule 9(b)'s heightened pleading requirement to civil RICO claims premised on wire, mail, and bank fraud). The Court finds that while Plaintiffs plausibly allege

the first two elements, they fail to clear the hurdle as to the elements that rest on fraud.

"[C]onduct[ing]" the affairs of a RICO enterprise means to "lead, run, manage, or direct" those affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993). "[*S*]*ome* part in directing the enterprise's affairs is required." *Id.* at 179 (emphasis in original). RICO defendants direct the enterprise's affairs "either by making decisions on behalf of the enterprise or by knowingly carrying them out." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 792 (6th Cir. 2012) (quoting *United States v. Fowler,* 535 F.3d 408, 418 (6th Cir. 2008) (emphasis removed)). On that front, Plaintiffs allege that VHOP and VHLLC conducted some aspects of the enterprise—i.e., they were the ones collecting monthly PAFs from tenants, recovering unpaid PAFs from tenants' security deposits, and diverting that money for other purposes, including the purchase of insurance policies—all while knowing that the "PAF provision serve[d] as a false pretext." (Doc. 24, #652, 662). So, while Plaintiffs do not allege who the enterprise's decisionmakers are, they do successfully allege that VHOP and VHLLC at the very least knowingly advanced the enterprise's efforts. That suffices as to the first element for pleading purposes.

Second, Plaintiffs must allege the existence of a qualified enterprise that is distinct from the "'persons' who conduct the affairs of th[at] enterprise through a pattern of racketeering activity." *In re ClassicStar Mare*, 727 F.3d at 490 (citation omitted). While this element is a bit of a closer call, ultimately, the Court finds it met as well. Under the statute, an "'enterprise' includes any individual, partnership,

corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiffs allege that the VineBrook Defendants "constitute an association-in-fact of distinct legal entities outwardly conducting a legitimate real estate business" while having the fraudulent "ulterior financial purpose" of collecting PAFs. (Doc. 24, #651–52).

"[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Plaintiffs' allegations clear this bar. The various VineBrook entities share the common purpose of running a real estate business operation and are closely interconnected—in fact, most of the entities are owned by VHOP, which is in turn partnered with VHTI. (Doc. 24, #638–43). In their reply brief, Defendants seem to argue that the enterprise members must share a *criminal* purpose, and they claim that Plaintiffs' "concession" that VineBrook has a "largely legitimate" purpose is fatal to the claim. (Doc. 37, #1193). That misstates the law. While Plaintiffs must of course sufficiently plead predicate (criminal) acts to plausibly allege their RICO claim, the term "enterprise" as used by the statute "include[s] both legitimate and illegitimate enterprises within its scope." *United States v. Turkette*, 452 U.S. 576, 580 (1981).

True, this is not the end of the inquiry. The corporate defendants allegedly doing the racketeering (VHOP and VHLLC) must also be *distinct* from the enterprise. *In re ClassicStar Mare*, 727 F.3d at 490 (citing *Cedric Kushner Promotions, Ltd. v.*

*King*, 533 U.S. 158, 161 (2001)). But when the alleged enterprise is made up of related corporate identities, distinctness is not a straightforward question. Indeed, "courts disagree over when and whether a corporate parent" can be distinct for RICO purposes. *Id.* That makes sense, it is hard to picture a parent company as distinct in any relevant sense from the network of entities it presumably controls. *Id.* at 493 ("Typically, a parent corporation and its subsidiaries do not satisfy the distinctness requirement because they cannot form an enterprise distinct from the parent."). On the other hand, perhaps that concern is reduced a bit here where VHOP and VHLLC are both subsidiaries, not the parent company.[4]

Despite the "meandering and inconsistent case law" in this area, the Sixth Circuit has managed to distill a principle that proves helpful here—"corporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity." *Id.* at 492. True, the latter part of that doesn't really move the needle. On the facts alleged here, it is not clear how VHOP and VHLLC specifically use their status as separate legal entities to "facilitate" the alleged fraud. That said, the other category is a better fit for Plaintiffs' allegations—each subsidiary is alleged to have a distinct role. According to Plaintiffs, VHOP's distinct role is conducting VHTI's business along with ownership of all the SFR properties (through ownership of the various subsidiaries that hold the deeds),

[4] While the complaint is not altogether detailed in describing the corporate structure, it appears that VHTI sits at the top. (Doc. 24, #638–39).

and that VHLLC's distinct role is as the "property management arm of VHTI and VHOP" that executed the leases with the tenants. (Doc. 24, #639–40). And those distinct roles arguably "facilitated" the scheme in the sense that their roles were *necessary* to the alleged fraud—some entity needed to hold title, and some entity needed to execute the leases and collect the PAF. Under Sixth Circuit case law, that appears to be enough to establish distinctness, at least for pleading purposes, which is all that matters here. *See Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 860 (S.D. Ohio 2020) (discussing *In re ClassicStar Mare*, 727 F.3d at 493 and finding allegations of different roles sufficient for distinctness).

But that is the end of the line. Despite plausibly alleging the first two elements, Plaintiffs' RICO claim fails on the last two because they do not plausibly allege a pattern of racketeering. *In re ClassicStar*, 727 F.3d at 484 ("To establish a substantive RICO violation, a plaintiff must show 'a pattern of racketeering activity.'" (quoting *Ouwinga,* 694 F.3d at 795)). Mail fraud and wire fraud, which are what Plaintiffs allege here, "are among the enumerated predicate offenses that can constitute 'racketeering activity.'" *Id.* (citing 18 U.S.C. § 1961(1)). So that seems like a promising start. But Plaintiffs must plausibly allege that the RICO Defendants committed a "continuous" series of "related" predicate frauds. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239–43 (1989) (explaining RICO's pattern requirement). Plaintiffs do not allege any.

Mail fraud requires proof of "(1) a scheme to defraud, and (2) use of the mail in furtherance of the scheme." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir.

2005). The elements of wire fraud "are essentially the same except that one must use the wires in furtherance of the scheme to defraud," rather than the mail. *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). That "scheme to defraud" is "any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *ClassicStar*, 727 F.3d at 485 (quoting *United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir. 2010)). "[A] plaintiff must also demonstrate scienter." *Id.* (citation omitted).

And one more thing bears mention, because the predicate offenses sound in fraud, Rule 9(b) applies, meaning Plaintiffs must "state with particularity the circumstances constituting fraud." *Wall*, 852 F.3d at 495 (6th Cir. 2017); *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984) (affirming dismissal of RICO mail fraud claim because complaint did not satisfy Rule 9(b)'s particularity requirement). "Under this rule, a plaintiff must specify (1) what the fraudulent statements were, (2) who made them, (3) when and where the statements were made, and (4) why the statements were fraudulent." *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (6th Cir. 2013) (citing *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir.2012)). The first three are perhaps not all that problematic here, as Plaintiffs point to the particular provisions in the VineBrook leases that they believe constitute fraud. (*See, e.g.*, Doc. 24, #652 (quoting the Pre-August 2024 VBHLAs' PAF Provision)). But they fail on the last point, plausibly alleging *why* those statements were fraudulent.

Plaintiffs' claimed fraud is that VHOP and VHLLC falsely represented to their tenants that VineBrook would use the PAF for maintenance when, in fact, they used those funds for other purposes. (Doc. 24, #652). Specifically, Plaintiffs contend that the RICO Defendants instead used the funds to purchase insurance policies to protect their own interests in the various properties. (*Id.*).

That alone is not enough for the Court to infer that the statements are in fact fraudulent. Remember, in those leases where it appears, the PAF provision states that the fee is "assessed to help Lessor pay for the costs *associated with* maintenance, repairs, and damages to the property." (Doc. 24, #644 (emphasis added)). But all Plaintiffs allege about the insurance are vague statements that the purchased policies "cover VineBrook Defendants' interests in the SFRs," that Defendants "receive certain financial incentives," that the insurance only financially benefits Defendants, and that the purchases unknowingly exposed Plaintiffs to "subrogation" by the insurance carriers. (Doc. 24, #653–54). Such general statements could apply to many sorts of insurance policies, including, for example, insurance that covers tenant-caused property damage. And in the Court's view, such insurance would certainly help Defendants pay for the "costs associated with maintenance, repairs, and damages to the property," just as the PAF provision says.

Admittedly, there are other kinds of insurance policies—e.g., injury-liability insurance, or loss of rental income insurance. And those policies might be unconnected to any actual upkeep costs. But Plaintiffs do not allege sufficient facts

for the Court to infer that the PAF is (or is not) being used by Defendants to purchase those types of insurance, especially considering Rule 9(b)'s particularity requirement.

So, because the complaint lacks any specific allegations of Defendants using the funds out of step with the PAF provision, it would seem Plaintiffs' fraud theory requires the Court to read the leases as representing that the PAF would be segregated from other rent and used *exclusively* for direct maintenance costs—i.e., to pay repair people or buy replacement parts—but those are words the lease simply does not contain.

Because Plaintiffs identify no false representation in the lease itself, the mail and wire fraud theory fails. And because there are no predicate acts plausibly pled, the Court dismisses the entire RICO claim.

### B. The Court Dismisses Plaintiffs' Class and Individual Breach of Contract Claims Because They Do Not Plausibly Plead a Breach.

Plaintiffs bring a breach of contract claim on behalf of each Plaintiff individually, and on behalf of a potential class, against all VineBrook Defendants for breaching "their contractual duty of good faith and fair dealing." (Doc. 24, #665). Plaintiffs allege Defendants did so by including the PAF provision and the attorney's fee provision in the Pre-August 2024 VBHLAs, and by the charging of tenants "Set Up Fees" and "Monthly Service Fees" under the Post-August 2024 VBHLAs. (*Id.* at #663–65).

These claims have a problem right out of the gate. Under Ohio law, "there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract." *Lucarell v. Nationwide Mut.*

*Ins.*, 97 N.E.3d 458, 469 (Ohio 2018). For Plaintiffs to plead a breach of contract claim, they must "identify[] and present[] the actual terms of the contract allegedly breached." *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (quoting *Harris v. Am. Postal Workers Union*, 198 F.3d 245, 1999 WL 993882, at *4–5, (6th Cir. Oct. 19, 1999) (per curiam) (table)) (applying Ohio law). While Plaintiffs point to contract provisions that they believe violate Ohio public policy, they do not point to any provision that the VineBrook Defendants *allegedly breached*. (Doc. 24, #664). In fact, in the section of their response brief addressing this point, all Plaintiffs state is that "Defendants breached the implied covenant of good faith and fair dealing inherent in every Ohio contract by imposing the PAF and Lessor Recourse Term" in violation of "Ohio's Landlord Tenant Act and public policy." (Doc. 34, #1014). But that does not allege a breach of a contract term.[5] As Plaintiffs have not alleged a breach, the Court dismisses this claim.

### C. The Court Dismisses Plaintiffs' Class and Individual Unjust Enrichment Claims Because the Fees Are Governed by a Lawful Contract.

Plaintiffs plead class-wide and individual unjust enrichment[6] claims in the alternative to their breach of contract claims. (Doc. 24, #666–67). Specifically, they

---

[5] While Plaintiffs elsewhere allege that the VineBrook Defendants used the PAF funds for purposes not named in the lease, nowhere do they claim that to be a breach of the contract.

[6] Plaintiffs call this claim for relief "Unjust Enrichment/*Quantum Meruit*." (Doc. 24, #666). However, in Ohio, while "the elements of quantum meruit and unjust enrichment have been found to be identical," they are distinct claims. *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 59 N.E.3d 758, 770 (12th Dist. 2016). "The difference is the manner in which damages are computed." *Id.* In unjust enrichment actions, damages are based on the benefit to the defendant, while in quantum meruit actions, damages are based on the value of the plaintiff's

claim that "VineBrook Defendants would be unjustly enriched if VineBrook Defendants are permitted to retain the benefits of charging and/or collecting the PAFs, legal fees, Set Up Fees and/or Monthly Service Fees." (*Id.* at #667).

"To establish unjust enrichment, a plaintiff must show that (1) a benefit was conferred by the plaintiff upon the defendant; (2) the defendant had knowledge of the benefit; and (3) the benefit was retained by the defendant in circumstances where it would be unjust to do so without payment." *Vandemark v. Reder*, 276 N.E.3d 451, 467 (1st Dist. 2026) (quoting *Helton v. Fifth Third Bank*, 2022-Ohio-1023, ¶ 25, (1st Dist. Mar. 30, 2022)).

However, under Ohio law, "[t]he doctrine of unjust enrichment cannot apply when an express contract exists." *Bickham v. Standley*, 917 N.E.2d 330, 335 (3rd Dist. 2009); *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) ("Under Ohio law, a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject."). The payments which Plaintiffs claim unjustly enriched VineBrook (at least those that were paid at all) were made pursuant to the leases, or in other words, contracts. So, this claim turns on whether any of the fee provisions are "illegal and unenforceable under Ohio law," meaning there would be no valid contract governing the fees in question.[7] (Doc. 34, #1016);

services. *Id.* (quotation omitted). Here, because no damages are being awarded on this claim, the Court does not need to guess which of the two the Plaintiffs seek.

[7] In the complaint, Plaintiffs concentrate their enforceability arguments under their "Disgorgement Pursuant to R.C. § 5321.14(A)" claim, not unjust enrichment. (*See* Doc. 24, #666–69). But as discussed below, "disgorgement" is not a cause of action under Ohio Revised Code § 5321.14(A). That section instead allows a Court to "refuse to enforce" an unconscionable rental agreement clause, meaning the statute is defensive in nature. So the

*Vandemark*, 276 N.E.3d at 468 ("[E]quity permits claims for unjust enrichment, notwithstanding the existence of a contract, where there is 'evidence of fraud, illegality, or bad faith.'" (quoting *Weiper v. W.A. Hill & Assocs.*, 661 N.E.2d 796, 804 (1st Dist. 1995))). Because the Court ultimately finds that the PAF and utility fee provisions are enforceable, and no plaintiff has standing to challenge the attorney's fees provision, the claim for unjust enrichment fails.

The Court starts with the PAF provision of the Pre-August VBHLAs. Plaintiffs allege that clause is "inherently unconscionable" because Ohio Revised Code § 5321.13(D) prohibits it—"in that [the term] expects to partially limit Defendants' statutory liabilities" by shifting maintenance costs to tenants. (Doc. 24, #668).

As far as the Court can tell, the basic argument goes like this. Ohio Revised Code § 5321.04(A) obliges the landlord to provide all necessary repairs to "keep the premises in a fit and habitable condition." And then § 5321.13(D) separately goes on to state that "[n]o agreement by a tenant to the exculpation or limitation of any liability of the landlord arising under law or to indemnify the landlord for that liability or its related costs shall be recognized in any rental agreement or in any other agreement between a landlord and tenant." Plaintiffs claim that the PAF here does just that; it limits Defendants' statutory liabilities outlined in § 5321.04(A) by

Court finds that unjust enrichment, an affirmative remedy, is the proper vehicle for any potentially meritorious claims based on the collection of unconscionable fee provisions. Indeed, the third element of unjust enrichment itself, the "unjust" part, is quite similar to unconscionability.

requiring tenants essentially to indemnify in advance, through the PAF, the landlord's maintenance and other costs. (Doc. 24, #668). The Court disagrees.

Begin with the text of § 5321.13(D). The Court sees no evidence that the PAF provision is an agreement to remove or limit "liability" as that section discusses. Even assuming the fee shifts some of the costs of maintenance and repairs onto tenants,[8] maintenance is a duty, not a "liability." And there is nothing in the PAF provision that limits tenants from say, suing over inadequate conditions. Nor is there anything that requires tenants to indemnify VineBrook for any liability that VineBrook might incur—such as liability because of a personal injury on the premises. Simply put, this is not an arrangement through which the tenants waive or assume any of VineBrook's "liabilities." Indeed, the one case Plaintiffs cite in support concerned a provision that explicitly had such an arrangement. *See Grandsko v. Andover Toledo, LLC*, No. CI-2019-2456, 2021 Ohio Misc. LEXIS 2149, at *8 (Lucas Cty. Ct. Com. Pl. Jan. 29, 2021) (discussing a lease provision stating that "Tenant agrees to protect, indemnify and save harmless the Landlord from all losses, costs or damages [related to injuries] … [i]n addition, the Tenant hereby waives all rights of recovery against the Landlord [for reimbursement by insurance]"). The Court thus dismisses the unjust enrichment claim based on the collected property administration fees.

[8] This argument also seems a bit in contradiction with Plaintiffs' RICO argument. There they argue that the PAF provision is fraudulent because those fees are *not* actually used for maintenance and repair costs, and here they argue that the provision is unlawful because VineBrook cannot collect a fee that *is* used for maintenance and repair costs.

The Court next addresses the attorney's fees provision of the Pre-August 2024 VBHLAs. Plaintiffs claim that such a provision is "clearly prohibited by R.C. § 5321.13(C)." (Doc. 24, #668). Plaintiffs have a point, that statute reads: "[n]o agreement to pay the landlord's or tenant's attorney's fees shall be recognized in any rental agreement for residential premises or in any other agreement between a landlord and tenant." Ohio Rev. Code § 5321.13(C). And the offending lease provision in question requires an evicted tenant to pay "[a]ll costs," including any "legal fees or attorney fees." (Doc. 24, #646). So, it may very well be true that this particular term is unenforceable in Ohio.

But Plaintiffs have a separate problem. To proceed in an Article III court, Plaintiffs must demonstrate standing. *Loren*, 505 F.3d at 607 (6th Cir. 2007). That is, they must show that they have suffered a concrete injury redressable by a decision in their favor. *Id.* (citing *Cleveland Branch NAACP v. City of Parma,* 263 F.3d 513, 523–24 (6th Cir. 2001)). And "standing is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (quotation omitted). So they must show standing as to each claim they intend to pursue. *Id.* at 351–53. Here, though, they do not allege that Defendants enforced the attorney's fee term against any of them. Indeed, so far as the Court can tell, VineBrook never evicted any named plaintiff, so Defendants could not have enforced the provision against them. Nor can Plaintiffs point to any imminent future harm, as none of them possess an active lease. So, as Plaintiffs lack standing to assert a claim based on that provision, the Court dismisses this portion of the claim as well.

Finally, Plaintiffs claim that the UARA—which includes the provisions for Set Up Fees and Monthly Service Fees—incorporated in the Post-August 2024 VBHLAs is inherently unconscionable because it is "clearly prohibited by R.C. § 5321.13(D)." (Doc. 24, #668). As quoted above, that provision prohibits agreements through which tenants are to indemnify or limit the liability of the landlord at the tenants' expense. Ohio Rev. Code § 5321.13(D).

But, much as with the alleged fraud-based claims, the complaint is light on allegations as to *why* the UARA provisions supposedly violate that statutory command. Remember, Plaintiffs allege that VineBrook engages a third-party billing agent, Conservice, to administer and bill tenants for utility services such as water, sewer, stormwater, trash, gas or electricity. (Doc. 24, #649). When tenants sign up, Conservice charges them a $30 set-up fee and additional monthly $10 service fees. (*Id.* at #650). Assuming that Plaintiffs rely on the same argument as for the PAF provision—that tenants paying a fee to cover a duty of the landlord violates the statute—it fails for the same reason. Charging tenants utility-related fees is a far cry from forcing tenants to assume liability or indemnify VineBrook.

However, Plaintiffs' response clarifies (or modifies) their legal theory a bit. They argue that it is unlawful for a landlord to charge for *access* to utilities, when the provision of such utilities is a duty that Ohio Revised Code § 5321.04(B) imposes on landlords. (Doc. 34, #1025). They contend that charging for that statutorily mandated access is what is unlawful. (*Id.* at #1025–26 (citing *Jenkins v. Roger C. Perry & Co.*, 614 N.E.2d 850, 851–52 (10th Dist. 1992))). But this argument also fails for a simple

reason. Conservice, who is a third party, is the one charging and ultimately collecting the fees. They are not alleged to flow to VineBrook. These fees instead are simply the cost of the tenants procuring utilities, and no Ohio statute requires VineBrook to cover set up or monthly utility costs—that falls on the individual tenant. In sum, because Plaintiffs fail to allege that Defendants unjustly collected any of these three fees, the Court dismisses this claim.

**D. The Court Dismisses Plaintiffs' Class and Individual Disgorgement Claims Because They Fail to State a Claim and It Is Not the Proper Remedy.**

Plaintiffs caption their fourth count "Disgorgement Pursuant to R.C. § 5321.14(A)." (Doc. 24, #667–69). As discussed in connection with the previous claim, they contend that the PAF provision, the Lessor Recourse attorney's fees provision, and the UARA's Set Up and Monthly Service Fees are "inherently unconscionable" because Ohio law flatly prohibits them. As already discussed, the Court disagrees as to the PAF provision and the utility fees, and Plaintiffs do not have standing to challenge the attorney's fees provision.

In any event, this claim also has another problem. "Disgorgement" is not a standalone claim; it is a remedy. Further, it is not a remedy available under Ohio Revised Code § 5321.14(A), the statute on which Plaintiffs rely. That section, which deals with unconscionable leases, states that a court "may refuse to enforce the rental agreement" entirely, or "may enforce the remainder of the rental agreement without the unconscionable clause," or it may "limit the application of the unconscionable

clause." Disgorgement, the return of funds, is none of those three. As discussed above, such a remedy properly belongs under Plaintiffs' unjust enrichment claim.

### E. The Court Dismisses Plaintiffs' Class and Individual Conversion Claims Because VineBrook Did Not Wrongfully Dispossess Plaintiffs.

Plaintiffs also bring conversion claims on behalf of Florence, Jones, and all other similarly situated individuals who paid PAFs to VineBrook. (Doc. 24, #669–72). Under Ohio law, conversion requires "a wrongful act or disposition of plaintiff's property rights." *6750 BMS, L.L.C. v. Drentlau*, 62 N.E.3d 928, 934 (8th Dist. 2016). Simply put, on the facts alleged, VineBrook did not wrongfully dispossess Plaintiffs by charging and collecting the PAFs from them. Plaintiffs *agreed* to pay that money as part of an express contract.

True, Plaintiffs argue elsewhere (and in response to VineBrook's motion to dismiss this claim) that Defendants fraudulently induced that contract, and that the terms are unlawful. But inasmuch as that is Plaintiffs' argument for conversion, it is duplicative of the RICO and unjust enrichment claims (which the Court has already dismissed). So, the Court dismisses the conversion claim as well.

### F. The Court Dismisses Plaintiffs' Claims for Injunctive and Declaratory Relief for Multiple Reasons.

Plaintiffs, individually and on behalf of the class, also seek the Court's declaration that the inclusion of the three contested fee provisions in their leases, as well as the collection of those fees, was unlawful. (Doc. 24, #672–74). The Court denies that request, because as the Court held above, the Plaintiffs have not plausibly pleaded that the PAF and utility provisions are unlawful, and the Plaintiffs lack

standing to challenge the attorney's fees provision. Further, this request is "redundant with the relief already sought." *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 908 (6th Cir. 1999); *see also Moser v. Menard, Inc.*, No. 1:20-cv-796, 2023 WL 5979263, at *3 (S.D. Ohio Sept. 13, 2023) (dismissing duplicative declaratory judgment claim "because the Court's adjudication of its breach of contract claim necessarily will answer the questions on which it seeks declaratory relief").

Plaintiffs' requests for injunctive relief, both those to prevent the provisions' inclusion in future leases and those to prevent collection, fail on the merits for the same reasons. Further, the requests fail because Plaintiffs' leases have terminated, so Plaintiffs do not demonstrate the necessary showing of "actual and imminent harm" to them. *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).

### G. The Court Dismisses Each Individual Breach of Contract Claim for Failing to Plead Sufficient Facts.

Each Plaintiff asserts an individual breach of contract claim premised on VineBrook's alleged failure to make repairs and maintain their residences in a fit and habitable condition. (Doc. 24, #685–87). In support, Plaintiffs allege, identically as to each of them, that they "contacted VineBrook Defendants requesting them to make various reasonable repairs and calls for maintenance" and that VineBrook "failed to make such repairs and failed to maintain the SFR in a fit and habitable condition as required by Ohio law." (*Id.*).

That fails to state a claim. These are precisely the types of "labels and conclusions" that *Iqbal* forbids. 556 U.S. at 678. A plaintiff must plead "sufficient factual matter" from which the Court can "draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* Here, the complaint alleges nothing about what specific repairs were needed, when they were requested, the nature of the habitability deficiencies, or how VineBrook responded. Without these facts, neither the Court nor VineBrook can assess the actual basis for the claims, nor reasonably infer that Defendants acted wrongly. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### H. The Court Dismisses Milligan's Claim Based on the Withholding of Her Security Deposit Because She Alleges No Damages.

Milligan asserts a claim based on the wrongful withholding of her security deposit in violation of Ohio Revised Code § 5321.16. (Doc. 24, #687–88). Upon commencement of her one-year lease, she paid a $1,125.00 security deposit. (*Id.* at #687). However, due to concerns regarding the habitability of the property, she terminated that lease after only three months. (*Id.* at #687). Those concerns included "misrepresentations about appliances, mold growth and insect infestation, all of which went without timely or appropriate remediation by VineBrook." (*Id.*). And Milligan says that when she departed, VineBrook withheld her security deposit in violation of § 5321.16. (*Id.*).

Under § 5321.16(B), a landlord must return a tenant's security deposit within thirty days or provide a statement itemizing any security deposit deductions. A tenant may recover damages under § 5321.16(C) if the landlord fails to comply with § 5321.16(B), including by wrongfully withholding money from the security deposit.

Milligan claims that VineBrook did in fact provide a written summary of charges they made and set off against her deposit, but that those charges were

unlawful. (Doc. 24, #687). The only specific charge she names in the complaint, however, is the PAF. (*Id.*). That is a bit of a mystery, though, because Milligan signed a post-August 2024 VBHLA, which did not contain a PAF provision. (*Id.* at #649). The move out statement, which she attached to the complaint, (*Id.* at #768–69), clears things up some. It shows that, while VineBrook initially charged her a PAF, it removed the charge before Milligan paid anything. So Milligan has no damages arising from the PAF-based wrongful-withholding claim she pleaded. Meaning, she lacks standing for the Court to adjudicate her claim. And aside from her conclusory allegation that Defendants violated the statute, Milligan makes no other allegations under this claim. So the Court dismisses this count as well.

* * *

In sum, all claims against the VineBrook Defendants fail. So the Court dismisses all defendants except HW from this case. But because this is a first dismissal, and because it is possible that Plaintiffs could address at least some of the identified pleading deficiencies through further allegations, the Court dismisses the claims without prejudice.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 28). As a result, the Court **DISMISSES** all counts except Count 6, the FDCPA claim against HW, **WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to **TERMINATE** all Defendants, except Hunter Warfield, Inc., from the Court's docket.

**SO ORDERED.**

August 13, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**